**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

EDWIN CINTRÓN PAGÁN, MARTÍN IZQUIERDO McDOUGAL, WILLIAM SANTOS FIGUEROA, FERNANDO AGOSTO BURGOS, and LEXTER NUÑEZ TEXIDOR,

Plaintiffs,

v.

MUNICIPALITY OF TOA ALTA,

Defendant.

**Civil No. 25-1444 (GMM)**

**OPINION AND ORDER**

Pending before the Court is Defendant Municipality of Toa Alta's ("Municipality") *Motion to Dismiss for Failure to State a Claim* ("*Motion to Dismiss*"). (Docket No. 23). For the reasons stated herein, the *Motion to Dismiss* is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.**

## I. BACKGROUND

On August 21, 2025, Plaintiff Edwin Cintrón Pagán ("Mr. Cintrón") filed a *Complaint* alleging the existence of eighty-one infrastructural barriers on public sidewalks across the Municipality in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-214 ("Title II"), Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794-94g ("Rehabilitation

Act”), and Article 1536 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 10801 (“Article 1536”). (Docket No. 1 at 1 ¶ 2).

On December 15, 2025, the Municipality filed a *Motion to Dismiss* (“*Original Motion to Dismiss*”) for failure to state a claim and, alternatively, that certain claims are time-barred. (Docket No. 16). In response, on January 5, 2026 Mr. Cintrón filed an *Amended Complaint and Demand for Jury Trial* (“*Amended Complaint*”), joining as Plaintiffs Martín Izquierdo McDougal (“Mr. Izquierdo”), William Santos Figueroa (“Mr. Santos”), Fernando Agosto Burgos (“Mr. Agosto”), and Lexter J. Nuñez Texidor (“Mr. Nuñez”) (collectively, “Plaintiffs”), under the same causes of action and requests for relief, with total of now eighty-six infrastructural barriers on public sidewalks identified across the Municipality. (Docket No. 19).

According to the *Amended Complaint*, Plaintiffs are individuals with disabilities within the meaning of Title II and the Rehabilitation Act.[1] (Id. at 4-7 ¶¶ 12-16). Plaintiffs allege that they use mobility devices - including wheelchairs and canes - to travel throughout the Municipality and rely on accessible pedestrian infrastructure to use public services, private

[1] Mr. Cintrón has an amputated leg. Mr. Izquierdo suffers from complex regional pain syndrome, chronic obstructive pulmonary disease, spinal conditions, and partial amputation of his toes. Mr. Santos suffers from complete paralysis of his legs. Mr. Agosto is paralyzed from the waist down. Mr. Nuñez has a spinal cord injury, resulting in complete paralysis in both legs. (Docket No. 19 at 4-7 ¶¶ 12-16).

businesses, and other public accommodations. (Id.). Since the Municipality is a public entity that receives federal financial assistance, Plaintiffs allege the Municipality is responsible for operating and maintaining public streets, sidewalks, curb ramps, and pedestrian facilities. (Id. at 7 ¶ 17).

Consequently, Plaintiffs allege that they have been harmed by the Municipality's failure to install and maintain curb ramps that comply with federal accessibility standards and disability law. (Id. at 2 ¶ 3). According to the *Amended Complaint*, these deficiencies "have persisted for decades" and constitute ongoing violations of Title II and the Rehabilitation Act, affecting Plaintiffs' daily ability to travel independently throughout the Municipality. (Id. at 10); *see generally* (id.).

Plaintiffs further allege that inaccessible or deteriorated pedestrian infrastructure have forced them to travel in roadways alongside vehicular traffic, barred access to certain sidewalks and intersections given their mobility devices, and denied them safe and independent access to public spaces, government facilities, and commercial establishments – including hospitals, schools, government buildings, and parks. (Id. at 10 ¶ 26); (Docket No. 24 at 5-6).

In addition to identifying eighty-six inaccessible locations, the *Amended Complaint* also includes a location where Mr. Cintrón

allegedly fell due to poor sidewalk conditions, sustaining physical injuries that required medical attention. This incident forms the basis for Mr. Cintrón's tort action against the Municipality. (Docket No. 19 at 10-20, 38-41 ¶¶ 27, 32-41).

Plaintiffs seek declaratory judgment affirming that the municipality violated their rights under Title II and the Rehabilitation Act; compensatory damages based on such violations; and injunctive relief requiring the Municipality to install, repair, and maintain accessible curb ramps and public sidewalks. (Id. at 88-89). Mr. Cintrón seeks further compensation in the amount of $100,000 for his individual injury under Article 1536. (Id.).

In its *Motion to Dismiss* filed on February 18, 2026, Defendant revives some of its previous challenges and presents new ones. The Municipality reiterates that all claims under Title II and the Rehabilitation Act are time-barred and that emotional distress damages are not recoverable under the Rehabilitation Act. (Id. at 11-13). The Municipality adds that Mr. Izquierdo, Mr. Santos, Mr. Agosto, and Mr. Nuñez were improperly joined in the *Amended Complaint*. (Id. at 6-11). Moreover, the Municipality argues that five of the eighty-six listed locations fail to state a claim because the *Amended Complaint* lacks any factual allegations describing a violation of federal disability law. (Id. at 12-13).

Finally, Defendant avers that Mr. Cintrón's claim under Article 1536 should be dismissed for lack of supplemental jurisdiction or, alternatively, because he has not established that Defendant owed or breached a duty of care. (Id. at 14-15).

On February 19, 2026, *Plaintiffs' Opposition to Defendants' Motion to Dismiss* was filed. (Docket No. 24). Therein, Plaintiffs argue that the *Amended Complaint* states plausible claims under Title II and the Rehabilitation Act. (Id. at 4-8). They add that even if damages stemming from emotional distress are not recoverable under the Rehabilitation Act, these claims should not be dismissed because other categories of harm are alleged. (Id. at 8-9) Plaintiffs also argue that the Title II and Rehabilitation Act claims are not time-barred because the violations are "ongoing" and "continuous." (Id. at 9-11). Lastly, they argue that the joinder of Mr. Izquierdo, Mr. Santos, Mr. Agosto, and Mr. Nuñez was proper, (id. at 11-12), and the Court has supplemental jurisdiction over Mr. Cintrón's tort claim. (Id. at 13-14).

## II. LEGAL STANDARD

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a plaintiff's complaint must set forth "a short and plain statement of the claim showing that the pleader is

entitled to relief" A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013), thereby containing "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" A.G. ex rel. Maddox, 732 F.3d at 80 (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). In this context, plausible "means something more than merely possible." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Courts accept well-pleaded facts as true, drawing all inference in non-movant's favor, but disregard legal conclusions and conclusory allegations. Iqbal, 556 U.S. at 678.

Courts can also consider documents outside the complaint at this stage so long as they are official records, central to the claim, or their authenticity is undisputed. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

## III. DISCUSSION

The Municipality raises both procedural and substantive challenges in its *Motion to Dismiss*. After determining the procedure as sound, the Court finds that Plaintiffs' claims are

timely and sufficiently pled, minus four locations and emotional damages.

A. Joinder of Plaintiffs

First, procedure. After reviewing the rules, the Court finds that Plaintiffs are properly joined in the *Amended Complaint*.

Federal Rule 20 of Civil Procedure governs permissive joinders. Fed. R. Civ. P. 20. It permits multiple plaintiffs to join in a single action where (1) their claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) at least one question of law or fact common to all plaintiffs arises in the action. Id. 20(a)(1). Rule 20 is construed liberally in the interest of promoting trial convenience, expediting the resolution of disputes, and avoiding unnecessary multiple lawsuits. *See e.g.*, Cruz v. Bristol Myers Squibb Co. P.R., 264 F.R.D. 22, 25 (D.P.R. 2010), aff'd sub nom. Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563 (1st Cir. 2012). Still, Rule 20 "is not a license for unbridled joinder of unrelated claims," as it requires that the joined parties demonstrate a genuine connection among their claims. *See* Cruz, 264 F.R.D. at 25.

Both of these Rule 20 requirements are met in the *Amended Complaint*.

1. Same Transaction or Occurrence

Rule 20's "transaction or occurrence" requirement is satisfied when there is a "logical relation" between the claims. Kress Stores of P.R., Inc. v. Wal-Mart P.R., Inc., 121 F.4th 228, 245 (1st Cir. 2024). This exists when "the same aggregate of operative facts serves as the basis of both claims." Id. (internal citation omitted). Operative facts are not simply "common facts" or tangential shared facts but rather core facts that underlie the theory of liability of the legal claims in question. Ryan v. Newark Grp., Inc., 349 F.R.D. 254, 257 (D. Mass. 2025).

The same evidence need not establish every plaintiff's claim. On the contrary: Rule 20 is satisfied where the claims are sufficiently related that litigating the claims together serves the purposes of judicial economy and avoids unnecessary duplication. *See* Kress Stores of P.R., Inc. 121 F.4th at 246; Cruz, 264 F.R.D. at 25.

In this case, there is a logical relation between Plaintiffs' claims. Each Plaintiff lists several instances where the Municipality's pedestrian right of way was not readily accessible to and usable by persons with mobility disabilities due to the Municipality's failure to install and maintain accessible curb ramps. Although each Plaintiff identifies different allegedly inaccessible sidewalks and relies on individualized evidence

concerning their own encounters with those barriers, (Docket No. 19 at 21-37, 42-79), the claims arise from the same alleged systemic, ongoing, and discriminatory failure by the Municipality to install accessible curb ramps on sidewalks. In addition, these common claims will require the Court to resolve overlapping issues concerning the Municipality's compliance with Title II and the Rehabilitation Act. (Id. at 2 ¶¶ 3-4). The fact that each Plaintiff encountered different barriers that involve different evidence is inapposite under Rule 20. *See* Kress Stores, 121 F.4th at 246.

Therefore, the first requirement for permissive joinder is met.

2. Common Questions of Law or Fact

There are clear common questions of fact and law between all Plaintiffs' Title II and Rehabilitation Act claims.[2] Therefore, the second requirement of 20(a) is likewise satisfied.

Rule 20 requires that "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B). Here, all Plaintiffs assert that they are qualified individuals with mobility disabilities. Furthermore, all Plaintiffs bring Title II and Rehabilitation Act claims based on the Municipality's alleged failure to provide accessible sidewalks

[2] Only Mr. Cintrón brings a separate and distinct tort claim under Puerto Rico law. However, the injuries and damages claimed are allegedly caused by the same failures by the Municipality to maintain its sidewalks.

and curb ramps. (Docket No. 19 at 2 ¶¶ 3-4). Specifically, all Plaintiffs assert that they are persons with mobility disabilities that must forgo participation in daily activities - including visiting public facilities and commercial establishments, places of public accommodation - or risk injury or damage to their mobility devices or themselves, by traveling on or around inaccessible sidewalks. Thus, resolution of these claims will require consideration of overlapping legal issues, including the scope of Defendant's statutory obligations and whether its policies, practices, or maintenance of the pedestrian right-of-way comply with federal disability law. *See* Kress Stores, 121 F.4th at 248 ("[I]t is not an abuse of discretion for a district court to permit joinder . . . for similar but independent conduct that occurred in the same time period and in the same place.") Plaintiff's joinder, therefore, promotes the purposes underlying Rule 20 by avoiding duplicative litigation and conserving judicial resources. *See* Cruz, 264 F.R.D. at 25.

B. Statute of Limitations

Next, timing. Defendants argue that the Title II and Rehabilitation Act claims are time-barred because Plaintiffs claim the violation has existed for "decades," implying that that knowledge of the damages accrued well before the statute of limitations. (Docket No. 23 at 12). Plaintiffs contend that their

claims are not time-barred because the Municipality's alleged breaches of Title II and the Rehabilitation Act are "ongoing" and "continuous." (Docket No. 24 at 9-11).

Upon review, the Court finds Municipality has not established that Plaintiffs' Title II or Rehabilitation Act claims are time-barred.

A statute of limitations is an affirmative defense. Fed R. Civ. P. 8(c)(1). Dismissal of a claim based on a statute of limitation is appropriate where the plaintiff's allegations leave no doubt that an asserted claim is time-barred. Martin v. Somerset Cnty., 86 F.4th 938, 942 (1st Cir. 2023).

Where a Court grants a Rule 12(b)(6) motion based on a statute of limitations affirmative defense, "the facts establishing that defense must: (1) be 'definitively ascertainable from the complaint and other allowable sources of information' and (2) 'suffice to establish the affirmative defense with certitude.'" Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) (*quoting* Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)).

Title II and the Rehabilitation Act do not provide a statute of limitations; therefore, the Court "borrow[s] the most analogous statute of limitations from Puerto Rico law, provided that it does

not conflict with federal law or policy." *See* Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 118 (1st Cir. 2003).

Puerto Rico's Act No. 44 of 1985 ("Law 44") P.R. Laws Ann. tit. 1, § 504, is "the Puerto Rico analogue" to the ADA, harmonizing Puerto Rico disability law with federal disability law. Vázquez Robles v. CommoLoCo, Inc., 252 F. Supp. 3d 111, 114 (D.P.R. 2017); Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110, 119-20 (D.P.R. 2011) (applying Law 44's statute of limitation period to ADA and Rehabilitation Act claims); *see also* Parker v. Universidad de P.R., 225 F.3d 1, 3 (1st Cir. 2000) (applying Title II of ADA and Rehabilitation Act decisional law interchangeably). Law 44 establishes a one-year statute of limitations period. Nieves-Márquez, 353 F.3d at 118. While state law determines the limitations period, federal law sets the start date. Vázquez Robles, 252 F. Supp. 3d at 114 (*citing* Toledo-Colon, 812 F. Supp. 2d at 120). This timeline "begins to run when the plaintiff 'knows or has reason to know of the injury which is the basis for the claim.'" Rodríguez-García v. Mun. of Caguas, 353 F.3d 91, 96-97 (1st Cir. 2004) (*quoting* Rodríguez Narváez v. Nazario, 895 F.2d 38, 41 n.5 (1st Cir. 1990)).

Certain exceptions exist. "Under the 'continuing violation' doctrine," for example, "a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as

a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). However, this doctrine applies "only to discriminatory conduct that takes place 'over a series of days or perhaps years,'" and not "to 'discrete acts' of alleged discrimination that occur on a 'particular day.'" Id. (*quoting* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)). ADA cases are subject to this exception. Tobin, 553 F.3d 121 at 130 n.7

Establishing the date in which Plaintiffs knew or had reason to know about the alleged injuries – that is, the date on which the one-year statute of limitations began - is impossible from the face of the *Amended Complaint*. Although the pleading identifies eighty-six allegedly noncompliant locations throughout the Municipality, it only provides one date: the day that Mr. Cintrón sustained a fall, giving rise to his Article 1536 tort claim.[3] (Docket No. 19 at 21-37, 42-79). No other allegation nails down a date: the *Amended Complaint* does not allege when those locations were encountered by Plaintiffs, nor when Plaintiffs were denied meaningful access to public accommodations due to the allegedly noncompliant infrastructure. *See* (Docket No. 19). Thus, the

[3] Mr. Cintrón's alleged injury occurred on June 8, 2025. (Docket No. 19 at 38 ¶ 32). The *Amended Complaint* was filed on January 5, 2026. (Id. at 90). Therefore, Mr. Cintrón's Article 1536 claim falls within the statute of limitations and is not time-barred. *See* Rodríguez-García, 353 F.3d at 96-97.

*Amended Complaint* does not reveal when any of Plaintiffs' claims accrued. Martin, 86 F.4th at 942.

Exceptions are equally unhelpful here. Plaintiffs' claims are not ones whose unlawfulness depends on the cumulative effect of repeated acts, as the continuous violations doctrine requires. *See* Morgan, 536 U.S. at 115-16. Rather, Plaintiff's injuries were caused by separate, discrete encounters with allegedly Title II-noncompliant public infrastructure throughout multiple locations in the Municipality. Each encounter with a distinct location that presents a non-accessible structure is an independent harm that does not rely on other repeated violations to create a cumulative injury. The Court notes, however, that this characterization of Plaintiffs' claims as discrete acts is necessarily preliminary because the *Amended Complaint* does not yet identify when each alleged violation was encountered, this determination remains subject to revision once Plaintiffs' more definite statement clarifies the timing and pattern of the alleged violations.

Since the *Amended Complaint* does not affirmatively reveal that the applicable limitations period has expired, dismissal is improper at this stage. Martin, 86 F.4th at 942. As such, the Municipality's *Motion to Dismiss* is **DENIED WITHOUT PREJUDICE** as to this argument.

Pursuant to Federal Rule 12(e) of Civil Procedure, Plaintiffs are **ORDERED** to provide a more definite statement on the dates that each of the alleged eighty-six Title II violations occurred. Should these dates reveal that the alleged violations occurred outside of the statute of limitations, the Municipality may revive its *Motion to Dismiss* as to this argument. *See, e.g.*, Álvarez-Vega ex rel. E.A.L. v. Cushman & Wakefield/Prop. Concepts Com., 290 F. Supp. 3d 131, 133 (D.P.R. 2017) (noting that, where a district court ordered a plaintiff to produce a more definite statement "specifying the date when the alleged injury occurred" for a Title III claim, the plaintiff may not add factual allegations that "go beyond the scope of the Court's order" without requesting leave to amend under Rule 15(a)(2)).

C. Statement of a Claim

Turning now to the merits. The Municipality also moves to dismiss five barrier locations - out of the eighty-six identified - for which the *Amended Complaint* includes only the street and coordinates where they are located, without additional facts to support the existence of a Title II or Rehabilitation Act violation. (Docket No. 19 at 12 ¶¶ 27.15, 27.17, 27.19, 27.27). The Court assesses four of these locations.[4]

[4] Defendants assert that there are five locations without sufficient facts, (Docket No. 23 at 12) (*citing* Docket No. 19 at 12 ¶¶ 27.7, 27.15, 27.17, 27.19, 27.27), but the location provided in paragraph 27.7 is paired with factual allegations later in the *Amended Complaint*. (Docket No. 19 at 24-25 ¶ 30.9).

Title II prohibits discrimination against individuals with disabilities by public entities like municipalities; it is modeled after Section 504 of the Rehabilitation Act. Parker, 225 F.3d at 5. Under Title II, a plaintiff must plausibly allege that: (1) the plaintiff is a qualified individual with a disability; (2) who was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against; and (3) such exclusion, denial, or discrimination was by reason of the plaintiff's disability. Id.; 42 U.S.C. § 12132.

For a Rehabilitation Act claim, a plaintiff must satisfy the same three elements and, additionally, allege a fourth: (4) that the program or activity from which the plaintiff was excluded or denied benefits receives federal financial assistance. *See* Parker, 225 F.3d at 4 n.2; Calero-Cerezo v. U.S. Dept. of Just., 355 F.3d 6, 19 (1st Cir. 2004) ("[T]he case law construing the ADA generally pertains equally to claims under the Rehabilitation Act.").

Defendant does not dispute that Plaintiffs are qualified individuals with disabilities.[5] Plaintiffs plead that Defendant

[5] The term "disability" means a physical impairment that substantially limits one or more major life activities of the individual. 42 U.S.C. § 12102(1). A "qualified individual with a disability" is a person that can meet the basic requirements for a government service, program, or activity even if they need reasonable accommodations to do so. *See* id. § 12131-32. All Plaintiffs in the present case have stated that they are individuals with mobility disabilities. (Docket No. 19 at 4-7 ¶¶ 12-16).

receives federal funds, which is also not disputed. (Docket No. 24 at 8). That leaves this Court to decide whether Plaintiffs have sufficiently pled a prima facie case that they were denied access to the Municipality's "services, programs, or activities" within the meaning of Title II, and if this exclusion was on the basis of their disability. Parker, 225 F.3d at 5; 42 U.S.C. § 12132. For the reasons below, this Court concludes that they have.

The standard of liability under Title II is a discriminatory denial of access, not negligence. Accordingly, allegations of inaccessible pedestrian infrastructure, standing alone, are insufficient. Iverson v. City of Boston, 452 F.3d 94, 102-03 (1st Cir. 2006). Rather, a plaintiff must plausibly allege that inaccessible sidewalks or curb ramps discriminatorily denied them, on account of their disability, meaningful access to a specific "public service, program, or activity."[6] Parker, 225 F.3d at 6-7.

At this early stage of proceedings, it is enough for Plaintiffs to allege that sidewalk inefficiencies affected their right to visit public facilities or community activities.[7] (Docket No. 19 at 21-37, 42-79); *see also* H.R. Rep. No. 101-485, pt. 2, at

---

[6] The First Circuit has not recognized public sidewalks themselves as services, programs, or activities covered by Title II and the Rehabilitation Act. Instead, they are facilities that can provide access to such services, programs, and activities that are covered by Title II. *See* Parker, 225 F.3d at 6-7 ("Although [Defendant] is not required to make every passageway . . . accessible, it must provide at least one route that a person in a wheelchair can use to reach [the public entity's program] safely.").

[7] Defendant has not argued otherwise.

84 (1990) ("The employment, transportation, and public accommodations sections of [the ADA] would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets."); *cf.* Iverson, 452 F.3d at 102-03 ("The plaintiffs' complaint offered no meaningful explanation as to how — if at all — the conditions of municipal streets and sidewalks deprived [plaintiffs] of access to *any* public service, program, or activity.") (emphasis in original); Betancourt-Colón v. City of San Juan, No. 19-CV-1837, 2020 WL 5221713, at *5 (D.P.R. Sep. 1, 2020).

As to the four locations without supporting factual information, (Docket No. 19 at 12 ¶¶ 27.15, 27.17, 27.19, 27.27), the record is wholly void of information supporting these claims' plausibility. The *Amended Complaint* fails to identify whether the Municipality engaged in the discriminatory denial of meaningful access to a specific public service, program, or activity. Without this information, the Court cannot conclude that Plaintiffs have plausibly pleaded a discrimination claim. *See* Lebrón v. Puerto Rico, 770 F.3d 25, 31 (1st Cir. 2014) (alleging only discrimination because of a disability does not give rise to a reasonable inference of discrimination).

As a result, the Court **GRANTS** the *Motion to Dismiss* as to these four allegations.

D. Emotional Distress Damages under the Rehabilitation Act

Lastly, damages. Plaintiffs seek compensatory damages for the "physical pain, fatigue, humiliation, loss of autonomy, and restriction of their mobility and participation in community life" that they have allegedly endured. (Docket No. 19 at 85 ¶ 75). The Municipality "requests the dismissal of all claims ar[]ising out of humiliation and emotional distress in Count II of the Complaint," under the premise that these damages "are not recoverable under Section 504 of the Rehabilitation Act." (Docket No. 23 at 13 ¶¶ 45-46).

The Supreme Court has held that emotional distress damages are not recoverable in private actions to enforce the antidiscrimination provisions of the Rehabilitation Act. Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 222 (2022). Federal laws enacted under the Spending Clause, like the Rehabilitation Act, do not allow for emotional distress damages because recipients of federal funding could not consent to be subject to damages for emotional distress, which are traditionally not available for breach of contract actions. Id. at 221-22. Since Cummings, other district courts have held that the ADA similarly does not allow for emotional distress damages. *See, e.g.*, Brown v. Zeta Charter Sch., No. 23-CV-5593, 2024 WL 4265691, at **4-5 (S.D.N.Y. Sep. 23, 2024).

While the Supreme Court and the First Circuit have not yet decided whether emotional distress damages are available under ADA, it has been recognized that Title II of the ADA was "modeled on" Section 504 of the Rehabilitation Act and that the courts "rely interchangeably on decisional law applying [Section] 504." Parker, 225 F.3d at 4. Moreover, as a matter of statutory interpretation, this Court's task is to "apply faithfully the law Congress has written," and not to "replace the actual text with speculation as to Congress'[s] intent." Luna Perez v. Sturgis Pub. Schs., 598 U.S. 142, 150 (2023) (citation modified).

Congress's clear intent was that the remedies available under the ADA mirror that of the Rehabilitation Act. Indeed, the ADA expressly incorporates the remedies set forth in the Rehabilitation Act, providing that "[t]he remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133.

It necessarily follows that if the remedies provided by Title II to ADA claimants are those remedies that are available under the Rehabilitation Act, and if emotional distress damages are not available under the Rehabilitation Act, then emotional distress damages would not be available in Title II cases, either. The Court

sees no reason to interpret the ADA differently than it interprets Section 504. Therefore, Plaintiffs are barred from seeking emotional distress damages under Title II or the Rehabilitation Act.

E. Supplemental Jurisdiction

The Court will retain supplemental jurisdiction over Mr. Cintrón's tort claim under Article 1536.

The federal claims substantially outnumber and predominate over the lone state law claim, and - considering that the state law claim arises from the same set of facts as the federal claims – this Court's exercise of supplemental jurisdiction appropriately serves the interests of judicial economy, convenience, and fairness. *See* Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011); 28 U.S.C. § 1367.

The *Motion to Dismiss* is **DENIED** as to this request.

**IV. CONCLUSION**

For the foregoing reasons, the *Motion to Dismiss* is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on September 4, 2026.

/s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE